**ARKANSAS–MISSOURI POWER CORPORATION, Appellant,**

v.

**Mrs. Clara K. PASCHAL, Administratrix of the Estate of Roy G. Paschal, former Collector of Internal Revenue for the District of Arkansas; Horace E. Thompson, former Collector of Internal Revenue for the District of Arkansas, and W. D. Self, Acting Collector of Internal Revenue for the District of Arkansas, Appellees.**

No. 15676.

United States Court of Appeals Eighth Circuit.

May 3, 1957.

Rehearing Denied June 3, 1957.

P. A. Lasley, Little Rock, Ark. (T. S. Lovett, Jr., Little Rock, Ark., A. L. Griesedieck, St. Louis, Mo., and L. A. Swanson, Chicago, Ill., on the brief), for appellant.

Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Robert N. Anderson, Atty., Dept. of Justice, Washington, D. C., and Osro Cobb, U. S. Atty., Little Rock, Ark., on the brief), for appellees.

Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.

**DONOVAN, District Judge.**

This appeal is from a judgment of dismissal in four cases consolidated for trial. The appellant will be referred to as the taxpayer, and the appellees will be referred to as the Collector. The learned trial court (following joinder of issue and a pretrial conference) decided the case adversely to the taxpayer.

The taxpayer's only challenge to the court's findings of fact is directed at findings 13 and 29. With respect to finding 29, counsel for the Collector concedes that the plan therein referred to provided for the cancellation of the mortgage. The taxpayer's criticism of finding 29 is directed at the inclusion of the word "entirety" therein. We have in mind that the finding must conform to the facts and evidence as reflected by the record. Commencing our review from this point, it may be said that the present appeal has to do with facts that govern our interpretation of that part of Treasury Regulations 103 applicable in the tax years here involved, which provide:

"Treasury Regulations 103, promulgated under the Internal Revenue Code of 1939:

"Sec. 19.22(a)—18. *Sale and purchase by corporation of its bonds.*—(1) (a) If bonds are issued by a corporation at their face value, the corporation realizes no gain or loss. (b) If the corporation purchases any of such bonds at a price in excess of the issuing price or face value, the excess of the purchase price over the issuing price or face value is a deductible expense for the taxable year. (c) If, however, the corporation purchases any of such bonds at a price less than the issuing price or face value, the excess of the issuing price or face value over the purchase price is gain or income for the taxable year.

\*    \*    \*    \*    \*    \*

"(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. (b) If the corporation purchases any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year. (c) If, however, the corporation purchases any of such bonds at a price less than the issuing price plus any amount of discount already deducted, the excess of the issuing price, plus any amount of discount already deducted (or of the face value minus any amount of discount not yet deducted), over the purchase price is gain or income for the taxable year. \*    \*    \* "

The facts of this case are necessarily of a technical nature. Many of them are undisputed. They will be stated as simply as possible for the sake of clarity. On or about February 23, 1935, the United States District Court for the Northern District of Illinois, Eastern Division, approved a petition filed February 21, 1931 of the Arkansas-Missouri Power Company, an Arkansas corporation (predecessor of taxpayer), for reorganization pursuant to Section 77B, Chapter VIII, of the Federal Bankruptcy Act, 11 U.S.C.A. § 207. The properties of the Arkansas-Missouri Power Company were located in 17 counties of Southeast Missouri and Northeast Arkansas and consisted generally of electric generating plants, transmission lines, local distribution systems, ice manufacturing plants, a water system, cash, and accounts receivable.

While the affairs of the old company were in the hands of the District Court and pursuant to the authority and by direction of that court and by consent of the interested parties, Day & Zimmerman, Inc., a nationally known and reputable firm of appraisal engineers, was employed and directed to inventory the

property of the predecessor, Arkansas-Missouri Power Company, and make an appraisal report in respect to all the properties of that Company.

Thereafter, Day & Zimmerman, Inc., carried out the appraisal and set forth the results thereof in a report, dated August 26, 1935, entitled "Report No. 3092, on Arkansas-Missouri Power Company, Blytheville, Arkansas," which was filed below as Plaintiff's Exhibit 9. This report was the basis of the plan of reorganization of the Arkansas-Missouri Power Company and was entitled "Modified Plan of Reorganization of the Arkansas-Missouri Power Company."

Pursuant to the Modified Plan of Reorganization the taxpayer was organized for the purpose of reorganization of the Arkansas-Missouri Power Company and took title to the latter company's property as of May 1, 1937, under the Modified Plan of Reorganization and with the approval of the Bankruptcy Court. Consistent therewith the taxpayer caused to be issued as of May 1, 1937, $2,834,640 of first mortgage 5% bonds due January 1, 1957; $944,880 of 6% cumulative preferred stock of a par value of $50 per share; and 165,805 shares of common stock of a par value of $1 per share in exchange for the properties of the Arkansas-Missouri Power Company and the surrender of the bonds held by the prior mortgagor, whereupon these securities were distributed as shown in the Modified Plan of Reorganization.

As a result of the appraisal by the engineers the property values of the old company were reduced when brought to the books of the taxpayer and, in turn, the taxpayer's net values were reduced by the Internal Revenue Service.

There was some objection to the original plan of reorganization by the Public Utility and Service Commissions of Missouri and Arkansas, and a modified plan of reorganization was agreed to by the interested parties to conform to the wish of the state Commissions. It was a taxable reorganization.

The reorganization was carried out pursuant to the terms and conditions of the Modified Plan of Reorganization agreed to by the interested parties, the Federal District Court before whom the proceeding was pending, and approved by the Public Utilities Commissions of the states in which the company operated.

At the time of reorganization on May 1, 1937, the taxpayer entered upon its books net plant and other assets aggregating $4,493,969.94 as follows: Depreciable property, net after accrued depreciation—$3,880,258.75; Land and nondepreciable property—$132,172.89; Cash and other asset accounts, less liabilites assumed—$115,955.06; Common Stock of East Missouri Power Company, net—$350,000; Salvage Materials—$15,-583.24.

The fair market value of the property listed in the above paragraph as of May 1, 1937, the date of reorganization, did not exceed $4,084,587.60 or $409,382.34 less than the same property was entered on the books of the taxpayer. All of the $409,382.34 is applicable to depreciable property, reducing the figure of $3,880,-258.75 to $3,470,876.61.

For the property described above the taxpayer, as heretofore stated, issued and delivered as of May 1, 1937, for distribution as per the Modified Plan of Reorganization, bonds of the aggregate par value of $2,834,625; 18,897½ shares of 6% cumulative preferred stock of the par value of $50 per share, aggregating $944,875; 165,805 shares of common stock of the par value of $165,805; and paid the cash and delivered the scrip, all as provided by the Modified Plan.

The taxpayer also entered upon its books as of the date of the reorganization capital surplus of $548,664.94. It is established that the fair market value on May 1, 1937, of the securities issued as aforesaid was as follows: $2,834,625 par value first mortgage 5% bonds, at 85% of par, aggregating $2,409,444 or $425,-181 less than par; 18,897½ shares of 6% cumulative preferred stock, $36 per share, aggregating $680,313.60; 165,805

shares of common stock, $6 per share, aggregating $994,830, making a total aggregate fair market value of the securities of $4,084,587.60.

| | Per Books | Adj. | As Amended |
|---|---|---|---|
| Depreciable Property ....... | $3,880,258.75 | | $3,470,876.41 |
| | | ——409,382.34 | |
| Nondepreciable Property .... | 132,172.89 | | 132,172.89 |
| Property Salvage .......... | 15,583.24 | | 15,583.24 |
| Stock East Mo. Power Co. .... | 350,000.00 | | 350,000.00 |
| Cash .................... | 612,590.96 | | 612,590.96 |
| Other Assets ............. | 302,770.79 | | 302,770.79 |
| | $5,293,376.63 | | $4,883,994.29 |
| Liabilities Assumed ........ | 799,406.69 | | 799,406.69 |
| Net Worth ............... | 4,493,969.94 | | 4,084,587.60 |
| Securities Issued .......... | | | |
| First Mortgage Bonds ...... | 2,834,625.00 | | 2,834,625.00 |
| Preferred Stock at Par ...... | 944,875.00 | | 944,875.00 |
| Common Stock at Par ....... | 714,460.94 | | |
| | | ——409,382.34 | 305,087.60 |
| | $4,493,969.94 | | $4,084,587.60 |

Subsequent to the redemption of the bonds in 1940 the entire capital stock of East Missouri Power Company, which cost its predecessor, Arkansas-Missouri Power Company, $563,675, was sold on June 7, 1945, at a price of $600,000, the value of which had been shown on the statement of assets received as of May 1, 1937, in exchange for securities in reorganization at $350,000.

At the date of the redemption of the bonds in 1940 there had been no other sales of the properties given to secure the mortgage indenture of January 1, 1937, but the balance sheets of the taxpayer issued subsequent to May 1, 1937, indicated additions by way of purchase and increase in value of all the assets to and including the redemption of the bonds.

The trial court followed its thirty-one findings of fact with a helpful explanatory memorandum. We quote in part therefrom as follows:

"The foregoing statement comprises various findings of fact proposed by counsel for both parties and will be considered the Court's Findings of Fact, the controlling elements of which are these: First, the total fair market value of the assets received by the plaintiff on May 1, 1937, established by competent evidence was $4,084,587.60 and the total fair market of the bonds and stocks given in exchange for the assets likewise established was, on May 1, 1937, $4,084,587.60, the fair market value of the preferred stock at $36 a share being $630,313.60, the fair market value of the common stock at $6 a share being $994,830, and the fair market value of the bond issue at 85¢ on the dollar being $2,409,440.

"From this it is seen that the aggregate fair market value of the common and preferred stock and the par value of the bonds exceeds the fair market value of the assets to the extent of more than $400,000. However, by no method of calculation can the value of the assets be found to be less than the par value of the bonds.

\*  \*  \*  \*  \*  \*

"The plaintiff must stand or fall upon its position that its bond issue

of $2,834,640 was exchanged at a discount because the aggregate par value of the bonds and the fair market value of the stock issued and delivered for the assets received exceeded the fair market value of the assets to such an extent as to amount to a 15% discount of the bonds. If the stock issued had represented obligations of the corporation as did the bonds, a basis to support this position of the plaintiff would be found. But that was not the situation at all. Stocks such as these constitute what in trade-parlance are known as 'equities'. They may be of great value, of small value, or of no value at all. They had no maturities, and were not direct charges against the assets of the company. True, it was shown, in fact, it was admitted that the stock had a market value but that did not affect the liability of the plaintiff company. The liability of the company for the payment of money was limited to the par value of the bonds issued and it received property having a value in excess of the amount of the bonds issued.

\*   \*   \*   \*   \*   \*

"The Arkansas-Missouri Power Corporation was not in the business of buying and selling stocks and bonds and was not directly concerned with the market value of its own securities. Its objectives were to obtain title to the assets of the public utility and to have the privilege of carrying on the business of the utility. It gained both of these objectives by complying with the order of the Federal Court and the requirements of the Public Service Commissions of the States of Missouri and Arkansas.

"I cannot possibly find in this transaction any basis for the position that there was a sale or issue of bonds at a discount and I must hold accordingly."

■ The sole question raised by this appeal is whether or not the bonds were issued at a discount by the taxpayer pursuant to the above-quoted regulation.

It is not seriously disputed that the bonds in question were issued as provided by a plan of reorganization under Section 77B of the Bankruptcy Act, 30 Stat. 544, chapter 541, as amended, and must provide participation for claims and interests strictly in keeping with their priorities. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Consolidated Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982.

If the bonds were issued at a discount, the net amount thereof is deductible and should be prorated or amortized over the life of the bonds. Helvering v. Union Pacific Ry. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363. That the fair market value at the date of reorganization of the bankrupt's property which was transferred to the taxpayer exceeded the face value of the new bonds to be issued was a discretionary matter for the court to determine. Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959. We are of the opinion that selling the bonds on the open market for 85 cents on the dollar has no bearing on whether the bonds were issued and paid for at par under the record of this case, nor do the facts in that connection support the taxpayer's claim of a deductible discount.

We have been cited to no case comparable to the facts of this case, and we have found none.

■ The finding and assessment of the tax in question by the Collector is presumptively correct. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. We have not overlooked the points and authorities cited by able counsel for the taxpayer in its attempt to carry the burden of proof required to be met in this type of case. Suffice it to say that

the cited cases are distinguishable on their facts.

Regardless of the claim that the reasoning of the trial court may be wrong in part, we conclude that the result arrived at by the court was right and the judgment entitled to be affirmed on appeal. Reynolds v. Hill, 8 Cir., 184 F.2d 294.

The judgment appealed from is therefore affirmed.