**MISSOURI PACIFIC RAILROAD COMPANY**
v.
**The UNITED STATES.**
**No. 499–59.**

United States Court of Claims.
Oct. 16, 1964.

Robert T. Molloy, Washington, D. C., for plaintiff. Mark M. Hennelly, Gilbert P. Strelinger, St. Louis, Mo., Grant W. Wiprud, Gerald J. O'Rourke, Jr., and Dale W. Wickham, Washington, D. C., on the briefs.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, and S. Laurence Shaiman, Washington, D. C., on the brief.

Before JONES and WHITAKER, Senior Judges, and LARAMORE, DURFEE, and DAVIS, Judges.

LARAMORE, Judge.

This is an action for the refund of Federal income taxes for the year 1954 in the amount of $2,480,183.29, together with deficiency interest in the amount of $121,182.52, plus statutory interest on these amounts. The question presented centers on the deductibility under section 163 of the 1954 Code [1] of so-called "pre-issue" interest resulting from a railroad insolvency reorganization.[2]

---

1. Section 163, in pertinent part, provides as follows:

   "§ 163.  Interest

   "(a) *General Rule.*—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

2. A second issue involves certain land-grant repayments to the United States made by the land-grant members of the Missouri Pacific affiliated groups. The parties have agreed that section 1341 of the Internal Revenue Code of 1954, as amended by section 60 of the Technical Amendments Act of 1958, 72 Stat. 1606, 1647, is mandatory in its operation so that these repayments made during 1954 must be taken as a deduction in 1954 or excluded from income in the earlier years returned, whichever treatment affords the group the greater tax benefit. The parties have further agreed that plaintiff's rights to a tax refund for 1954 under section 1341 shall be determined under Rule 38(c), now Rule 47(c) (2), proceedings, since the amount of plaintiff's recovery under that claim is dependent on the issue we are called on to decide.

The Missouri Pacific Railroad Company, the taxpayer here, has been continuously engaged in operating a railroad in interstate commerce since its organization in 1917. From July 1, 1933 to March 1, 1956, taxpayer and 24 subsidiary railroad corporations, together constituting taxpayer's railroad system, were parties to a reorganization proceeding under section 77 of the Bankruptcy Act.[3]

Over the years, three separate plans of reorganization were proposed and rejected. A fourth and final plan of reorganization, to be effective as of January 1, 1955, was approved by the Interstate Commerce Commission on July 29, 1954.[4] It was not until March 1, 1956, that the Bankruptcy Court was able to enter its Consummation Order and Final Decree, making the reorganization effective as of January 1, 1955.[5] Thus, final approval of the plan of reorganization was not obtained until after the effective date of the plan

Pursuant to the Consummation Order, taxpayer was recapitalized and all of its subsidiaries in trusteeship, except one,[6] were merged into the recapitalized taxpayer as the surviving corporation and the new operating company.[7]

In accordance with the provisions of the plan as adopted, taxpayer's old common stockholders received a reduced number of taxpayer's new Class B common stock; taxpayer's old preferred stockholders exchanged their shares plus accumulated dividends for an equal stated value of taxpayer's new Class A common stock; old unsecured general creditors received equivalent face value of taxpayer's new securities consisting either of mortgage bonds or debentures. Each class of the old security holders of taxpayer's system, with the exception of one class, received cash plus new securities of the recapitalized taxpayer equivalent to the principal amount of the old obligations, plus interest accrued to the effective date of the system's reorganization plan. Thus allowances for accrued interest up to the effective date of the plan were reflected in the face value of the new bonds and cash. Interest on the old securities beyond December 31, 1954 was generally "not authorized for payment"[8] by the court. Accordingly, under the plan, interest on the new securities was generally payable from January 1, 1955. However, where the court authorized current payment of interest in cash on some of the old securities after December 31, 1954, interest on the substituted new se-

---

3. 11 U.S.C. § 205 (1958 Ed.).

4. This plan was again approved with some slight modifications by the I.C.C. on November 9, 1954.

5. On February 25, 1955, the Bankruptcy Court entered an order approving the plan (In re Missouri Pacific Railroad Co., 129 F.Supp. 392 (E.D.Mo.)), and this order was affirmed on appeal on September 14, 1955 (Missouri Pacific Railroad Co. 5¼% S. S. S. B. C. v. Thompson, 225 F.2d 761 (8th Cir.). Certiorari was denied January 30, 1956 (350 U.S. 959, 76 S.Ct. 347, 100 L.Ed. 833). On September 19, 1955, the District Court entered a further order confirming the re-organization plan (In re Missouri Pacific Railroad Co., 135 F.Supp. 102 (E.D. Mo.)). This order was affirmed by the Court of Appeals on February 28, 1956 (Missouri Pacific Railroad Co. v. Thompson, 229 F.2d 898 (8th Cir.)).

6. The Natchez & Southern Railway Co., a wholly owned subsidiary of the taxpayer, was the exception.

7. The Internal Revenue Service, through the Director of the Tax Rulings Division, in a series of rulings issued in 1956, held, in response to request filed by taxpayer and its reorganization manager, that the various exchanges which took place upon the March 1, 1956 consummation of taxpayer's reorganization were tax free within the meaning of section 368(a) (1) (E) as a recapitalization.

8. Throughout 1955 and through February 1956, on his monthly financial statements submitted to the District Court, the trustee who held custody of and operated the properties of taxpayer's affiliated group, reported the interest accruals as deductions from income, but in each instance he stated that the interest accrued was "not authorized for payment."

·curities ran from the date of the last interest payment on the old securities.[9]

All members of taxpayer's system joined in the filing of consolidated Federal income tax returns for the calendar years 1954–56 inclusive. Also through·out this period, taxpayer and all members ·of its affiliated group kept their respective corporate books of account on the basis of the calendar year and in accord·ance with the accrual method of accounting.

In arriving at its taxable income for the calendar year 1955, taxpayer in its ·consolidated income tax return for its affiliated group took deductions for the accrual of interest on its debt as provided for in the old securities, which were later exchanged pursuant to the plan of reorganization consummated on March 1, 1956. This was duly allowed by the Commissioner on audit. However, these accruals of interest were never actually paid in 1955. On its consolidated income tax return for the calendar year 1956, taxpayer's affiliated group likewise deducted accruals of interest on its outstanding debt obligations. Of the total interest so deducted and allowed by the Commissioner for 1956, part of it was attributable to the accrual of interest on the system's old debt for the period January 1, 1956 to February 29, 1956, and the remainder (for the period March 1 through December 31, 1956) constituted interest on taxpayer's new debt as provided by the plan of reorganization consummated on March 1, 1956.

As stated earlier, all of taxpayer's new ·securities with the exception of two [10] bore interest from the plan's effective ·date, January 1, 1955. Accordingly, taxpayer paid to the holders of its new se·curities amounts equivalent to interest for the period from January 1, 1955 (the ·effective date of the plan) to March 1, 1956 (the date of the Consummation Order). Taxpayer did not deduct these amounts on its 1956 Federal income tax returns, although it now contends (and the Government denies) that it is entitled to deduct the entire amount.

Taxpayer filed a claim for refund for the calendar year 1954 in which it contended that this amount of so-called "pre-issue" interest on the new obligations which was paid in 1956 to account for interest running during the period between the effective date of the plan and the consummation date should be allowed as a deduction in 1956 thereby creating a net operating loss carryback to 1954. This claim was formally rejected by the Commissioner of Internal Revenue, and the instant action was timely brought.

The Government now concedes that taxpayer, in computing its income for 1956, is entitled to a deduction for the interest if paid on its new securities for the period January 1, 1955 to February 29, 1956, but only to the extent that the amounts paid are in excess of the amount it originally accrued as interest obligations for such periods. Thus we are only concerned with whether or not taxpayer is entitled to the further deduction.

■ It appears to us that what taxpayer attempts to do here runs contrary to the fundamental principle of income tax law that a taxpayer may not take more than a single deduction for a single item of expense. Cf., Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127 (1934); Ford v. United States, Ct.Cl., 311 F.2d 951, decided January 11, 1963. Taxpayer concedes that it is not entitled to a double deduction for interest but attempts to avoid the application of this doctrine to the instant situation by arguing that the interest accrued in 1955 and from January 1, 1956, to February 29, 1956, and that paid in 1956 related to two different debts. From this taxpayer argues that

9. Interest on First Mortgage 4½% Bonds issued to holders of taxpayer's First and Refunding 5% Bonds accrued from July 1, 1955, and interest on Collateral Trust Notes received by holders of New Orleans First Mortgage Bonds accrued from March 1, 1956. These exceptions were made as some interest was actually paid during 1955 on the old obligations which these securities were issued to replace.

10. Supra, footnote 9.

by virtue of I.T. 3635, 1944 Cum.Bull. 101, it was entitled to deduct interest on its old obligations to the date of the consummation of the reorganization and that upon the authority of Commissioner of Internal Revenue v. Philadelphia Transportation Co.[11] it is entitled to deduct this so-called "pre-issue" interest accruing on its new obligations.

▆▆ At first blush, taxpayer's argument seems to have some merit if we treat each deduction involved as a separate and independent transaction. For I.T. 3635, supra, appears to represent the current administrative practice of allowing all railroads undergoing section 77 reorganization to accrue and deduct interest on outstanding debts despite default and despite the unlikelihood of ultimate collectibility. Moreover, Commissioner of Internal Revenue v. Philadelphia Transportation Co., supra, is authority for the proposition that under certain circumstances "pre-issue" interest on *new* securities issued in a reorganization is deductible. However, before the cited authority can support taxpayer's conclusion that it is entitled to deduct interest on both the old and the new securities for the period between the effective date and the consummation date of the reorganization, the interest so deducted as an item of expense under section 163 must relate to two independent obligations, since interest is the premium paid for the use of money, or in the words of the Supreme Court interest "is the amount which one has contracted to pay for the use of borrowed money." [12]

▆▆ We think that the determinative factor in this case is that during the period from the effective date of the plan and its final approval, taxpayer and its affiliates were obligated to pay interest only *once* on its outstanding bonded indebtedness. The old and new securities were not independent obligations existing at the same time, but instead evidenced the same indebtedness in which

one was to be substituted for the other in the event final approval of the plan was achieved. Consequently, when taxpayer made the accruals of interest for the period January 1, 1955, to February 29, 1956, it was clear that its interest obligations were payable either as prescribed in the pre-existing securities, or, if final approval was achieved, its liability for interest would be determined as provided for in the new securities predated to the effective date of the plan. It is clear that taxpayer was never liable under both. Here the accrual of interest for the period in issue with its concomitant deduction was taken as provided for in the old securities; payment and satisfaction of this accrued obligation was accomplished as prescribed by the new bonds. To the extent that this interest payment was in satisfaction of the prior accrued liability it was not a new or additional expense accruing for the first time in 1956, and as such cannot support an additional deduction. For a taxpayer using the accrual method of accounting may only deduct an item of expense accrued within the taxable year and it is not entitled to a deduction when the item is paid in the later year. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944).

▆▆ Taxpayer attempts to avoid the application of this rule of law by arguing that the interest it now attempts to deduct first accrued in 1956 and, as such, we cannot view the transaction as payment of the prior accrual. The fallacy of taxpayer's argument is that the old and the new securities were not independent obligations but were designed to be a substitute for each other, as to both principal and the interest encompassed by the period in issue. A mere substitution in the form of the evidence of indebtedness is not the creation of a new

---

11. 174 F.2d 255 (3d Cir.), aff'd per curiam 338 U.S. 883, 70 S.Ct. 186, 94 L.Ed. 542 (1949).

12. Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 214, 76 L.Ed. 484 (1932).

and increased obligation supporting an additional deduction for interest.[13] Cf., City of Los Angeles v. Teed, 112 Cal. 319, 327, 44 P. 580, 582 (1896). In other words, when the old securities were exchanged for the new, the total amount of taxpayer's "outstanding indebtedness" did not increase by the principal amount of its new securities. Consequently, the interest paid pursuant to taxpayer's new securities for the period in issue, to the extent already accrued as provided by the old securities, did not first accrue when the new securities were exchanged for the old. The deduction claimed would permit taxpayer to use the same item of expense twice for the reduction of its taxable income. If allowed, this would amount to a double deduction for the same item of expense. Such a result would be contrary to the fundamental principle of income tax law that a taxpayer may not take more than a single deduction for a single expense.

Moreover, properly viewed, the Philadelphia Transportation Co. case, supra, gives no comfort to taxpayer. It argues that that decision stands for the broad proposition that "pre-issue" interest, issued in a reorganization, is always deductible. However, it is apparent from the controlling facts in that case that no such broad interpretation is warranted. The deduction allowed in that case did not in any way involve the question of a double deduction. There, for the most part, non-interest bearing equity securities were exchanged in a reorganization for debt securities. "Pre-issue" interest was accrued on the newly created debt. No deduction on the pre-existing non-interest bearing securities was ever claimed or taken. Judge Goodrich, writing for the majority of the court, carefully pointed out that in that case

"taxpayer, as a new corporation, created its own new indebtedness. It did not assume existing liabilities

on which interest had already accrued against the predecessor companies. * * *

" * * * [N]either the present taxpayer nor any of its predecessors was in a position to take advantage of a 1939 deduction for the interest payments in question." [174 F.2d at 256].

In the present case the taxpayer is seeking, as demonstrated above, to take a double deduction for the same item of expense—a situation envisioned and explicitly put apart by the majority in the Philadelphia Transportation Co. case. Here not only interest had accrued on taxpayer's outstanding debt but also taxpayer had taken advantage of this accrued interest as a deduction for the reduction of its taxable income. The mere fact that as the result of the reorganization the substituted form of the evidence of indebtedness was predated to the effective date of the plan is not sufficient reason to bring this case within the holding of the Philadelphia Transportation Co. case. To conclude otherwise would produce a result which would be wholly illogical and at the same time be an unwarranted extension of that case.

Consequently, we must hold that taxpayer is not entitled to deduct in computing its taxable income for 1956, the entire amount of interest it paid on its new securities for the period January 1, 1955 to February 29, 1956. However, as conceded by the government, taxpayer is entitled to deduct in computing its taxable income for 1956, those amounts of interest which it paid on its new securities for this period (January 1, 1955, to February 29, 1956), to the extent that the amounts paid are in excess of the amounts it originally accrued as interest under the pre-existing securities for this period. Although a refund is not sought in the petition for 1956, it is our understanding that that year has

13. Nor are we persuaded by taxpayer's argument that as a result of the reorganization a new and separate debt arose since the new securities had a different rate of interest, maturity date, identity of the obligor, and assets pledged as collateral therefor. These factors relate to the form of the *evidence* of indebtedness and do not affect the amount of "outstanding indebtedness."

been left open administratively. Consequently, we now treat plaintiff's petition in the alternative, that is to say that if the deduction to which taxpayer is entitled under our opinion for 1956 is not sufficient to create a loss carry-back to 1954, taxpayer, nevertheless, is entitled to a refund which such a deduction might create for tax year 1956.

Accordingly, judgment is entered for plaintiff. The amount of recovery, if any, is to be determined pursuant to Rule 47 (c) (2) of the Rules of this court.