**MISSOURI PACIFIC RAILROAD COMPANY**
**v.**
**The UNITED STATES.**
Nos. 142–67, 95–68.

United States Court of Claims.
June 12, 1970.

Robert T. Molloy, Washington, D. C., attorney of record, for plaintiff. Mark M. Hennelly, Gilbert P. Strelinger, St. Louis, Mo., Gerald J. O'Rourke, Jr., and Robert E. Simpson, St. Louis, Mo., of counsel.

E. Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Ira M. Langer (No. 142–67) and Philip R. Miller and Theodore D. Peyser, Washington, D. C. (No. 95–68), of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

COLLINS, Judge.

This is a consolidated action [1] by the Missouri Pacific Railroad Company to recover, in addition to certain other claims,[2] the extra taxes which it had to pay as the result of its failure to receive a debt discount deduction for the years 1957–61. Both parties have filed motions for partial summary judgment in regard to the debt discount issue, so that this is the only issue before the court for consideration at this time.

Just recently in the case of Erie Lackawanna R.R. v. United States, 422 F.2d 425, 190 Ct.Cl. 682 (Feb. 1970), this court grappled with the question of whether debt discount amortization would arise in instances where a corporation issued bonds in exchange for its own stock. We held that debt discount was not available in such a situation—especially since the face value of the bonds was equivalent to the amount originally paid for the stock. Our decision in *Erie Lackawanna* was limited just to the facts of that case, and we purposely avoided collateral issues such as whether debt discount would be available where bonds were issued for "other types of property," and whether debt discount would arise when the purchase price of the stock was less than the face value of the bonds. As a result of the instant case, we are now required to expand on our ruling in *Erie Lackawanna* and carry it several steps further.

Plaintiff is a corporation organized and existing under the laws of the State of Missouri and has its principal offices located in St. Louis. At all times pertinent to the issues in question, plaintiff was engaged in the business of operating

---

1. This action is a consolidation of case No. 142–67 and case No. 95–68. Plaintiff's claim for debt discount deduction is the same in each case except that No. 142–67 is concerned with the taxable years 1957–58, and No. 95–68 relates to the years 1959–61.

2. The other claims which are involved in this action, but which will not be considered at this time are: (1) failure to allow a capital loss on the sale of an office building (No. 95–68); (2) improper treatment of corporate distributions as dividends rather than as a return of capital (Nos. 95–68 and 142–67); (3) failure to use the retirement-betterment method of accounting for the installation of welded track (No. 95–68); and (4) failure to allow plaintiff a foreign tax credit for taxes paid to the Republic of Mexico (Nos. 95–68 and 142–67). Also involved in case No. 142–67 was a dispute over how much tax credit plaintiff was entitled to receive in 1958 under § 1341 of the Int.Rev.Code of 1954 for refunds made to the United States of amounts reported as income under claim of right in prior years. This issue was resolved in favor of plaintiff by this court in the case of Missouri Pac. R. R. v. United States, 423 F.2d 727, 191 Ct. Cl. —— (Mar. 1970).

as a common carrier by rail in interstate commerce subject to the jurisdiction of the Interstate Commerce Commission (ICC). For the taxable years in question, plaintiff was an accrual basis taxpayer and filed its federal income tax returns on the basis of the calendar year. Plaintiff, along with its subsidiaries, was reorganized, effective March 1, 1956, pursuant to a plan of reorganization approved by the ICC and the Federal district court[3] having jurisdiction over plaintiff's trusteeship under section 77 of the Federal Bankruptcy Act, 11 U.S.C. § 205 (1964). Under the reorganization plan, plaintiff issued: (1) collateral trust notes, (2) first mortgage 4¼% bonds (series B and C), (3) general mortgage income 3¾% bonds (series A and B), (4) 5% 90-year debentures, and (5) stock[4] in exchange for its own outstanding debt securities and stock and the outstanding debt securities and stock of its subsidiaries. As a result of this reorganization, the subsidiaries were merged into and became a part of plaintiff corporation.

The terms of the exchange varied among the holders of the debt and equity interests of plaintiff and its subsidiaries. For instance, in some cases the bondholders received new debt securities (often in various combinations) equal to the face amount of their old debt with the accrued and unpaid interest being paid in cash. Other bondholders received new debt securities in an amount equal to the sum total of the face amount of their old bonds plus the accrued and unpaid interest. The above-mentioned interest had accrued during the years plaintiff was in the process of reorganizing under section 77 of the Federal Bankruptcy Act. This accrued interest was deducted by plaintiff from its gross income for federal income tax purposes during the years in which it became due. In addition, plaintiff also took deductions for certain amounts of amortized bond discount relating to the old bonds. Once the reorganization became effective, all unamortized discount on the old securities was carried forward and amortized during the life of the new securities.[5]

Plaintiff's claim in this case is premised upon the fact that the aggregate maturity value of the new bonds issued pursuant to the reorganization plan was greater than the value of the securities received in exchange, as determined by New York Stock Exchange price quotations. Plaintiff alleges that the aggregate maturity value of the new bonds was $529,117,141, while the fair market value of the old securities given in exchange was determined to be $452,151,252. The difference of $76,965,889 is the amount which plaintiff claims represents the debt discount deduction which must be amortized over the life of the bonds in question. Treas.Reg. § 1.163–3(a) (1), T.D. 6984, 33 Fed.Reg. 19175 (1968); Helvering v. Union Pac. R.R., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363 (1934); Pierce Oil Corp. v. Commissioner, 32 B.T. A. 403 (1935). Specifically, the instant case is concerned with the taxable years 1957–61. For each of these 5 years, plaintiff asserts that it was entitled to an amortization deduction in the amounts of $1,027,372 in 1957, $1,023,325 in 1958, $1,018,760 in 1959, $1,019,453 in 1960, and $905,650 in 1961. Thus, these are the amounts which form the basis for plaintiff's claim of recovery.[6]

3. The plan was approved on March 1, 1956, by the United States District Court for the Eastern District of Missouri by Order No. 4710A.

4. For purposes of the debt discount issue in this case, the value of the new stock issued as part of the reorganization will not be included in the total amount of property given up by plaintiff. Thus, the stock figures and any reference thereto will be eliminated from consideration for purposes of this decision.

5. See, e. g., Chicago, M., St. P. & Pac. R. R. v. United States, 404 F.2d 960, 186 Ct.Cl. 250 (1968), where this court gave its approval to the idea of carrying forward old discount and amortizing it along with new discount over the life of the new bonds.

6. The above-mentioned facts have all been agreed to by stipulation of the parties.

The difference between this case and *Erie Lackawanna* is that in the latter, debt securities were exchanged for the company's *own stock*. In this case, debt securities of the reorganized and consolidated company were exchanged for the company's *own bonds* and the *stocks and bonds of its subsidiary companies*. Consequently, the question now confronting the court is whether the rule of *Erie Lackawanna* should be extended to cover the types of securities just mentioned, or whether plaintiff's own bonds and the securities of its subsidiaries should be included in a category different from its own stock. Plaintiff urges that the old securities involved in this case should come under the heading of "other types of property," different from a corporation's own stock, and thus should be treated differently. Defendant argues that there is no real difference between a situation where a corporation exchanges debt securities for its own stock and where it exchanges debt securities for the stocks and bonds of its subsidiaries. For reasons to be hereinafter stated we agree basically with the arguments of defendant and render our decision in accordance therewith.

The basis of our decision in *Erie Lackawanna* was that when a corporation exchanged $100 face value bonds for its own stock for which it had received $100, then it had really lost nothing as a result of the transaction. Plaintiff has tried to argue that we are not concerned with gains or losses (which involve a tax basis problem under sections 1012 and 165 of the Internal Revenue Code of 1954), but rather we are concerned with interest or "compensation for the use or forbearance of money" under section 163. Deputy v. Du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416 (1940). We agree that debt discount is normally treated as interest under section 163, but we should point out that in some cases a debt discount deduction has been taken under section 165 which is the loss provision. *E. g.*, Dodge Bros. v. United States, 118 F.2d 95 (4th Cir. 1941); Atlanta & Charlotte Air

Line Ry. v. Commissioner, 36 B.T.A. 558 (1937). The distinction, however, is somewhat irrelevant since the amount of the deduction would be the same under either section. Therefore, for purposes of this case, we will accept plaintiff's approach and treat the debt discount as interest, deductible under section 163.

In essence, what this court was saying in *Erie Lackawanna* was that, in the exchange of bonds for stock, there was no difference in the values of what was given up and what was received. In other words, there was an exchange of equals, so that when the transaction was completed the corporation's financial situation had simply been rearranged, but it had not really been changed. The corporation had not obligated itself to pay out any more than it had already received. Consequently, we held in *Erie Lackawanna* that there was no amount which could be treated as interest and deducted as a debt discount. We now find that we are faced with basically the same type of situation as existed in *Erie Lackawanna*.

The main difference between the approach taken by this court in *Erie Lackawanna* (which will be followed today in this case) and that urged by plaintiff in this case is over the method of evaluating the property received for the new bonds. Plaintiff would have us determine the value of the securities received by it in exchange for its new bonds through the use of fair market value as determined by New York Stock Exchange price quotations. Just as we could not accept this method of valuation in *Erie Lackawanna*, where a corporation's own stocks were involved, so also we cannot accept this method where a corporation's own bonds are involved. Fair market value is meaningless when attached to a piece of property which will no longer be subject to market conditions. It cannot be of any real significance in a situation such as this where plaintiff's old securities were immediately destroyed upon redemption. Instead, the face value of plaintiff's old bonds at the time of their issuance is the true valuation of these

securities *as far as plaintiff is concerned*. See Union Pac. R.R. v. United States, 401 F.2d 778, 185 Ct.Cl. 393 (1968), cert. denied, 395 U.S. 944, 89 S.Ct. 2017, 23 L.Ed.2d 462 (1969). The fact that the fair market value of the old bonds may be less than the face value of the new bonds can in no way reduce the amount of value originally paid to plaintiff for the old securities. Consequently, for the court to say that plaintiff is entitled to a debt discount deduction because the fair market value of the old bonds is less than the maturity value of the new bonds is to give credence to an illusional or fictional interest charge which does not actually exist. For this reason, we cannot adopt plaintiff's method of valuation.

In addition, if we were to employ plaintiff's system of determining debt discount through the use of fair market value, it would appear that plaintiff would be unjustly increasing the amount of its deductions without correspondingly increasing its obligations. We have already conceded that plaintiff is entitled to carry over the discount from the old bonds. To then say that plaintiff is entitled to further discount as the result of the old bonds having a fair market value less than the face value of the new bonds would result in allowing plaintiff to increase the amount of its discount simply by substituting new obligations for old. We do not feel that a corporation should be allowed to increase the amount of its allowable deductions in such a manner, unless there truly is an increase in its bond indebtedness. Plaintiff has not been able to show that there is such an increase in this case.

We stated in *Erie Lackawanna* that, in the bond discount area, a corporation's own stock (and we have expanded this to include a corporation's own bonds by this case) comprises a category completely separate from cash and other types of property. The reason for this categorization should now be obvious. If plaintiff exchanged its bonds for some tangible property such as the inventory of a corporation or even for the securities of another corporation, it would be understandable to value this property, for purposes of determining debt discount, through the use of fair market value.[7]

7. We do not mean to imply by this statement that we are now holding that debt discount is available where bonds are issued for property (other than the corporation's own securities). In fact, there appears to be a definite split of authority on this question with Nassau Lens Co. v. Commissioner of Internal Revenue, 308 F.2d 39 (2d Cir. 1962), and American Smelting & Ref. Co. v. United States, 130 F.2d 883 (3d Cir. 1942), holding that debt discount is available where bonds are issued for property, and Southern Natural Gas Co. v. United States, 412 F.2d 1222, 188 Ct.Cl. 302 (1969), Montana Power Co. v. United States, 159 F.Supp. 593, 141 Ct.Cl. 620, cert. denied, 358 U.S. 842, 79 S.Ct. 23, 3 L.Ed. 2d 76 (1958), and Montana Power Co. v. United States, 232 F.2d 541 (3d Cir.), cert. denied, 352 U.S. 843, 77 S.Ct. 51, 1 L.Ed.2d 59 (1956) (dictum), stating that debt discount is not so available. We are simply saying that, as between the situation where a corporation issues bonds for its own securities and where a corporation issues bonds for other types of property, we can better understand how fair market value could be applied to the latter situation but not to the former—assuming, for the moment, that debt discount would be available in the latter situation.

It should be pointed out that this problem may not arise in the future because of the Tax Reform Act of 1969, 83 Stat. 487. Both the House and Senate Reports have indicated that there may be original issue discount when a corporation issues a bond for a price less than its face value whether it receives cash, stock, *or other property* (including the assets of another corporation). Also, in a case where a bond is issued for property, it is provided that the issue price of the bond will be the fair market value of the property. S.Rep.No.91–552, 91st Cong., 1st Sess. 148 (1969); H.R. Rep.No.91–413 (Part I), 91st Cong., 1st Sess. 110 (1969).

We do not feel that such a provision would be detrimental to our decision in this case, especially in light of a Senate amendment which now provides that the issue price of bonds issued in reorganizations shall be the stated redemption price at maturity. Tax Reform Act of 1969, 26 U.S.C.A. § 1232(b) (1970).

However, there is a great deal of difference between this situation and one where a corporation receives its own stocks and bonds. Fair market value in the latter instance just does not have the same significance nor does it create the same result as in the former.

Having rejected plaintiff's method of computing debt discount through the use of fair market value and having placed a corporation's own bonds in the same category as its own stock, it now becomes necessary to determine how the stocks and bonds of a corporation's subsidiary should be categorized. Plaintiff would have us follow the reasoning of the United States Court of Appeals for the Third Circuit in American Smelting & Ref. Co. v. United States, 130 F.2d 883 (3d Cir. 1942). In that case, the court ruled first that debt discount amortization would be available where stock of a subsidiary corporation was used as payment for the issuance of new debt securities by the parent. In addition, the court held that the cost of the debt securities should be determined by reference to the fair market value of the stock at the time of the exchange. Thus, once again, plaintiff would have us regard the securities of a subsidiary as property which should be treated differently from a corporation's own stock, and it also urges us once more to use fair market value as the means of determining valuation. However, we are unable to accept these arguments by plaintiff just as we are unable to accept the decision of the Third Circuit in American Smelting & Ref. Co. v. United States, *supra*.[8]

In the situation which exists in this case, where, prior to the reorganization, the subsidiaries involved were wholly owned,[9] there is no real difference between an exchange by a corporation of bonds for its own securities and those of its subsidiaries. The same general rule applies, namely, that the true value of the stocks and bonds *in the eyes of the corporation* is the original value of the securities, which value becomes a part of the assets of the parent corporation as the result of the reorganization and merger. Once again, to try and say that the cost of the new bonds is the fair market value of the old securities, at the time of the exchange, would be to create an interest charge that does not exist since the effect on the capital structure of the corporation would be the same regardless of the fair market value of the old securities. Consequently, we conclude that the securities of the subsidiaries involved in this case [10] should be treated the same as the securities of plaintiff corporation.

One point which we purposely failed to consider in *Erie Lackawanna* was whether debt discount would arise in a situation where the amount paid for the stock was less than the maturity value of the bonds. The corresponding issue in this case is whether debt discount will arise if the value of the old bonds is less than the value of the new bonds.

In examining the majority of the exchanges which took place as a part of the reorganization, it would appear that it would again be unnecessary to determine the answer to the above-stated issue.

---

8. This court has on two occasions specifically rejected the decision in American Smelting & Ref. Co. v. United States, *supra*—once in Southern Natural Gas Co. v. United States, *supra*, and again in Montana Power Co. v. United States, 159 F.Supp. 593, 141 Ct.Cl. 620, cert. denied, 358 U.S. 842, 79 S.Ct. 23, 3 L.Ed.2d 76 (1958).

9. The two main subsidiaries involved in this case were New Orleans, Texas & Mexico Railway Company and International-Great Northern Railroad Company. Plaintiff owned approximately 94% of the common stock and all the preferred stock of New Orleans. (The remaining 6% was publicly owned.) New Orleans owned all the stock of International.

10. The securities of the subsidiaries which are involved in this case are: New Orleans first mortgage bonds (series A–D), New Orleans common stock, International first mortgage bonds (series A–C), and International adjustment mortgage 6% bonds.

This is because in most of the transactions there was an exchange of items of equal value. For instance, in the exchange of new first mortgage 4¼% bonds (series B and C) for old Missouri Pacific first and refunding mortgage 5% bonds, and in the exchange of new collateral trust notes for old New Orleans, Texas & Mexico Railway Company first mortgage bonds (series A–D), there was an exchange of equal values of old and new bonds—with the accrued interest being paid separately in cash. In the rest of the transactions (except for two), there was an exchange of new bonds for old bonds to the extent that the value of the new bonds equaled the value of the old bonds plus accrued interest. Thus, again there was an exchange of equals, except this time plaintiff received an old bond plus a cancellation of interest indebtedness which together equaled the value of the new bond. In both types of transactions, plaintiff was receiving the equivalent of what it was giving up, so that there was nothing which could be deducted as interest.

However, based on the figures presented in the record, there appear to be two instances in which the exchange of bonds for securities was not equal. This occurred in the exchange of new first mortgage 4¼% bonds (series C) and general mortgage 4¾% income bonds (series A and B) for the publicly held common stock of New Orleans, Texas & Mexico Railway Company. The other instance involved the exchange of new first mortgage 4¼% bonds (series B and C) for old Little Rock & Hot Springs Western Railroad Company first mortgage 4% bonds. Assuming that the figures which we now have are correct, which indicate that there is a difference between the value of the new bonds and the amount received in exchange therefor, it becomes necessary to decide whether this difference should give rise to a discount in light of the fact that this exchange was part of a corporate reorganization.

There is some authority to the effect that where there is a difference between the maturity value of the bonds and the amount received in exchange, and this takes place during a reorganization, then this difference should not be treated as debt discount. Montana Power Co. v. United States, 232 F.2d 541, 549–50 (3d Cir.), cert. denied, 352 U.S. 843, 77 S.Ct. 51, 1 L.Ed.2d 59 (1956) (dictum); New York, C. & St. L. R.R. v. Commissioner, 23 B.T.A. 177 (1931); Rev.Rul. 59–387, 1959–2 Cum.Bull. 56. In the revenue ruling, the Commissioner of Internal Revenue held that where there was an issuance of 30-year debentures by a corporation for its own preferred stock, this was simply a recapitalization, and the preferred stock could not be recognized as assets in the hands of the corporation. Thus, considering the character of the exchange, the Commissioner did not feel that there was bond discount in the true meaning of the term. In Montana Power Co. v. United States, *supra,* three of the seven judges, in a dicta portion of the opinion, stated that an underlying theory of bond discount is that the transaction must be negotiated in the open market and at arm's length. They did not feel that such elements were present in a tax-free corporate reorganization.

Despite this authority, which is not exactly overwhelming in its strength or particularly persuasive in its approach, we find that bond discount can arise where there is a difference between what is given up and what is received, and this can occur in connection with a corporate reorganization. The fact that there is a difference in value between the bonds being issued and the securities being given up is enough to invoke the debt discount provision. The ultimate result of this difference is that the corporation is obligating itself to pay a debt which is greater in value than that which it is receiving. It seems irrelevant that what the corporation is receiving is its own securities, or that they will be destroyed because, in essence, these securities still have a value with the corporation, namely, their original cost. This original cost is still a part of

the corporate assets and thus should be considered as the actual amount paid for the issuance of the new bonds. Consequently, any difference between this amount and the maturity value of the bonds should be treated as a discount and amortized over the life of the bonds.

To summarize the conclusions of the court in this case, we hold:

(1) That for purposes of determining debt discount, the debt securities and stock of a corporation and the debt securities and stock of a corporation's wholly owned subsidiary, which are given up for a corporation's new bonds, should be treated alike.

(2) That when exchanged for new bonds, the above-mentioned securities should not be evaluated by the use of fair market value. Instead, the stocks should be given a value equal to the amount originally paid for them, and the value of the bonds should be determined by their maturity value as of the time of issue.

(3) That debt discount is available where the value of the stocks or bonds, as determined in item (2) above, is less than the maturity value of the debt securities for which they are exchanged.

Applying these rules, we find that, in the present case, there was no debt discount available in any of the exchanges which were a part of the reorganization—except possibly in two of the transactions. In regard to these two transactions, which involve the publicly held common stock of New Orleans, Texas & Mexico Railway Company and the bonds of Little Rock & Hot Springs Western Railroad Company, we do not have sufficient information to make a final decision. The record indicates neither the amount originally paid for the common stock,[11] nor the exact figures of the Little Rock transfer—especially the amount of accrued interest involved, if any.[12] As a result, we are remanding the case to the trial commissioner in order that he might compel the production of the data necessary to reach a final determination in regard to these two transactions. If the commissioner should find that there is a difference in value between the new Missouri Pacific bonds and the old securities given in exchange therefor, plaintiff will be entitled to a debt discount deduction in an amount which will be determined by the commissioner. If no such difference is discovered, then plaintiff will not be entitled to any discount deduction. In either case, unless the parties hereto stipulate in the interest of time, the commissioner shall report his findings to the court for final determination and judgment.

11. In a letter to Mr. Roswell Magill from Mr. H. T. Swartz, Director, Tax Rulings Division, dated March 13, 1956, New Orleans, Texas & Mexico Railway Company was listed as having 148,329 shares of outstanding common stock at $100 par value. The schedule referred to in finding 8 of Missouri Pac. R. R. v. United States, 337 F.2d 637, 167 Ct.Cl. 725, 736 (1964), lists the principal amount of this publicly held common stock to be $859,800. We are not certain whether either figure has any relation to the amount actually paid for the stock.

12. There is quite a discrepancy between the figures in plaintiff's schedule A, attached to the order of the district court, and the schedule in Missouri Pac. R. R. v. United States, *supra*, relating to the exchange of Little Rock & Hot Springs Western Railroad Company first mortgage 4% bonds for Missouri Pacific Railroad Company first mortgage 4¼% bonds (series B and C). In plaintiff's schedule A, $1,519,246 worth of new bonds were exchanged for $1,140,000 worth of old bonds (as listed in the March 13th letter to Mr. Magill, note 11 *supra*). However, in the schedule in the *Missouri Pacific* case, $1,244,592 worth of new bonds were exchanged for a similar amount of Little Rock bonds. Because of this discrepancy, we feel the transaction should be examined by the commissioner.