CLAUSSEN'S, INC., Plaintiff-Appellee,

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 72–1050.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1972.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, Dept. of Justice, Washington, D. C., R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., William L. Goldman, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellant.

A. Rowland Dye, J. Larry Broyles, James E. Johnson, Jr., Augusta, Ga., for plaintiff-appellee.

Before TUTTLE, BELL and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

This is a tax case involving the question whether amortizable bond discount was incurred by taxpayer's predecessor when it issued debentures to its stockholders in connection with a recapitalization of its common stock. The district court held that bond discount did arise as a result of the transaction and, accordingly, that the predecessor to the taxpayer was entitled to a discount deduction, in the amount of $295,282.50, on its final federal income tax return. We reverse.

The facts are not disputed. Claussen's Bakeries, Inc. (hereafter Bakeries) was organized in 1954 for the purpose of acquiring all of the common stock of H. H. Claussen's Sons, Inc., a manufacturer of bakery products. In connection with the acquisition Bakeries sold 162,500 shares of $1 par value Class A common stock for $9 per share to an underwriting syndicate and 62,500 shares of $1 par value Class B common stock for $8 to thirty-five individuals.[1] As a result of these transactions Bakeries had an aggregate capital of $225,000, represented by its Class A and Class B common stock, and paid-in surplus in the amount of $1,737,500.

Subsequently, in August, 1956, Bakeries' stockholders adopted a plan of recapitalization which provided for the retirement of all of the outstanding Class A and Class B common stock. In exchange for each share of Class A or Class B common, the stockholders were to receive—

1) One-third of a share of new $1 par value common stock;

2) Stock purchase warrants evidencing the right to purchase two-thirds of a share of the new common stock for $5.50 per share; and

3) One $10 face value 6% forty year debenture due in 1996.

The plan also provided for the sale to a syndicate of underwriters of 16,000 shares of the new common stock, so much of the new common as was unsubscribed upon the expiration of the stock purchase warrants held by the original Class A and Class B shareholders, and $250,000 of the new 6% debentures.

Thus, upon recapitalization the holders of the previously outstanding 225,000 shares of Class A and Class B common stock received 75,000 shares of the new common stock, stock purchase warrants evidencing the right to purchase 150,000 shares of the new common stock, and 6% debentures in the aggregate face amount of $2,250,000. The stockholders exercised all of their stock warrants, purchasing the 150,000 shares of new common stock. The remaining 16,000 shares were sold to the underwriting syndicate which ultimately offered them for resale to the public.

The face amount of the new 6% debentures plus the par value of the 75,000 shares of new stock received by the shareholders thus exceeded the par value of the original Class A and Class B common stock together with its paid-in surplus by $362,500. In seeking to register

[1]. An additional $487,500 was raised by the sale of 5% debentures.

the new stock and debentures with the Securities and Exchange Commission Bakeries proposed to show an asset of goodwill in the amount of $362,500 as an offsetting entry on its balance sheet to match this increase, but the Commission rejected this accounting approach and suggested instead that the increment be written off as bond discount. Pursuant to this suggestion Bakeries made an entry of $362,500 as amortizable bond discount in its prospectus and thereafter in its financial statements and annual reports to stockholders. The corporation did not, however, attempt to deduct the portion of the discount amortized each year (2½%) on its tax returns for the years 1956 through 1962.[2]

On September 25, 1963 Bakeries entered into a contract with Fuqua Industries, Inc., a Georgia corporation, whereby Bakeries was to sell all of its assets to Fuqua. As payment therefor Fuqua agreed to issue its own debentures in the amount of $964,000 and to assume Bakeries' liability on the 6% bond issue. Claussen's, Inc., the taxpayer herein, was created by Fuqua as a wholly-owned subsidiary to receive Bakeries' assets, and in October, 1963 the transfer was effected. These several reorganizations were what is known as "tax-free reorganizations". See 26 U.S. C.A. Section 301 et seq.

On its final income tax return for the period ended October, 1963 Bakeries sought to deduct $362,500 as bond discount, but the Commissioner disallowed the deduction and assessed a deficiency against Bakeries. Claussen's, Inc., as transferee of Bakeries' assets, paid the amount assessed, and brought this suit for refund in the district court. The court held that bond discount in the

amount of $362,500 was incurred in 1956 when Bakeries distributed its 6% forty year bonds to the holders of its Class A and Class B common stock and that Bakeries, therefore, was entitled to a deduction on its final return for 1963. However, in determining the amount of bond discount to be deducted in 1963, the court reduced the $362,500 figure by the amount which Bakeries could have deducted, but did not, during the years 1956 through 1962. It concluded that for 1963 Bakeries was entitled to a total bond discount deduction of $295,282.50. The Commissioner now appeals.[3]

■ Before reaching the merits of this case it is appropriate, we think, to state briefly what bond discount is. In the common-place transaction it occurs where bonds are sold on the market for cash at a price less than the face amount of the bonds. Thus, if a $100 face amount bond is sold for $90, the $10 difference is bond discount, being, in effect, deferred interest on the amount actually borrowed. Although the Internal Revenue Code does not specifically deal with the matter, the economic function of discount as interest for tax purposes has long been recognized and thus, when amortized over the life of the bonds, it is deductible by the issuer. Helvering v. Union Pacific Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363 (1934); United States v. Midland-Ross Corp., 381 U.S. 54, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965).

However, the issue presented by this appeal is quite different from the situation where bonds are sold for cash at a discount on the open market. Here, the corporation issued bonds and stock in exchange for its own outstanding *common stock*. The taxpayer nonetheless argues that inasmuch as the aggregate

---

2. It is, of course, not contended by taxpayer that this requirement by the S.E.C. justifies a similar accounting procedure for income tax purposes.

The government contends that for tax accounting purposes Section 312(a)(2) of the Code applies:

"Except as otherwise provided in this Section, on the distribution of property by a corporation with respect to its stock, the earnings and profits of the

corporation (to the extent there of) shall be decreased by the sum of . .

\* \* \* \* \*

(2) the principal amount of the obligations of such corporation."

3. The parties agree that the total discount, according to the findings of the trial court, if allowable, should have been in the sum of $287,500 instead of $362,-500.

amount of par value and paid-in surplus represented by the Class A and Class B common stock which was surrendered in the transaction was less than the aggregate face amount of the debentures issued in exchange therefor, bond discount was incurred by the corporation. The theory behind this argument is that the surrendered stock has an ascertainable value *to the corporation* and that if the corporation has to issue bonds with a face amount greater than this value in order to retire the stock, it has incurred discount in a true economic sense. In support of this proposition the taxpayer cites several cases which have held or have indicated that bond discount may arise where a corporation issues debentures in exchange for its outstanding securities.[4]

We note, however, (while expressly reserving doubt as to the correctness of these decisions) by way of distinction that all but one of these cases involved an exchange of bonds for other than common stock, i. e., bonds for bonds,[5] bonds for preferred stock,[6] or bonds for tangible property.[7] The one exception is Missouri Pacific Ry. v. United States, supra, n. 4, in which the Court of Claims held, among other things, that the exchange of first mortgage bonds and general mortgage income bonds for the publicly-held common stock of the New Orleans, Texas, and Mexico Railway Co.—a subsidiary of the taxpayer—might give rise to bond discount if the value of the common stock were properly proven. Upon rehearing [8] it was decided that inasmuch as this common stock had been shown to have a value greater than the bonds, no discount was incurred by the taxpayer on the exchange. It was therefore unnecessary for the court to consider whether discount might arise in a pure bonds-for-common stock exchange and the court's original opinion was modified to that extent.

While the foregoing might adequately serve to distinguish the line of cases cited by taxpayer, we think that the truly distinguishing feature of the case before us is that the corporate issuer, Bakeries, issued not only bonds in exchange for its outstanding Class A and Class B common stock, but, as well, new common stock to each of the old Class A and Class B shareholders *in direct proportion to their original equity in the corporation*. The net effect of the transaction, therefore, was that the equitable owners of Bakeries before the recapitalization were still the equitable owners of the corporation *after* recapitalization.[9] We are of the view

---

4. American Smelting & Refining Co. v. United States, 130 F.2d 883 (CA 3, 1942); Industrial Development Co. v. United States, 51 AFTR 1514 (N.D.Ill. 1956); Southern Fertilizer & Chemical Co. v. Edwards, 167 F.Supp. 879 (M.D. Ga.1955); Nassau Lens Co., Inc. v. Commissioner of Internal Revenue, 308 F.2d 39 (CA 2, 1962); Erie Lackawanna Ry. v. United States, 422 F.2d 425, 190 Ct.Cl. 682 (1970); Missouri Pacific Ry. v. United States, 427 F.2d 727, 192 Ct.Cl. 318 (1970); Cities Service Co. v. United States, 316 F.Supp. 61 (S.D.N.Y., 1970); St. Louis-San Francisco Ry. v. United States, 444 F.2d 1102, 195 Ct. Cl. 343 (1971); Atchison, Topeka & Santa Fe Ry. v. United States, 443 F.2d 147 (CA 10, 1971); Gulf, Mobile & Ohio Ry. v. United States, 339 F.Supp. 489 (D.C., 1972).

5. St. Louis-San Francisco Ry. v. United States, supra; Atchison, Topeka & Santa Fe Ry. v. United States, supra.

6. E. g., American Smelting & Refining Co. v. United States, supra; Erie Lackawanna Ry. v. United States, supra.

7. Nassau Lens Co. v. C.I.R., supra.

8. Missouri Pacific Ry. v. United States, 433 F.2d 1324, 193 Ct.Cl. 257 (1970).

9. In each of the cases cited by taxpayer (n. 4, supra.) in support of its position the security holders involved held a radically different form of participation in the reorganized corporate enterprise than they had held prior to reorganization. Taxpayer argues here that there was in fact a radical change in the equitable interests of Bakeries' shareholders as a result of the recapitalization, pointing to the facts that the common shareholders received only one-third of a share of the new common in exchange for each full share of the old and that 16,000 shares of new common were sold to an underwriting syndicate. Of course, a reduction in total number of shares outstand-

that where, as here, the common shareholders' equitable posture relative to the corporation and to one another is left substantially intact in a bonds-and-common stock-for-common stock exchange, bond discount does not arise.

 This precise question apparently has not heretofore been decided.[10] However, it seems clear that bond discount should arise only where the use of capital is actually procured by a bond issue. Helvering v. Union Pacific Co., supra. In other words bond discount might properly be incurred, in economic terms, in a transaction involving some form of borrowing by the corporation at a cost to it of something more than the coupon rate of interest, or conversely in the situation where something of real value to the corporation is surrendered in exchange for its new bonds. While we find it difficult to see how a corporation's own common stock has value to it when reacquired, we do not base our decision here on the assumption that it does not. Rather we look to the substance of the transaction involved. Immediately after recapitalization the original shareholders owned substantially the same equity interest in the corporation as they had held before and thus their prior rights of ownership were preserved intact. This being so, the old shareholders surrendered nothing of value to the corporation, cf. Himmel v. Commissioner of Internal Revenue, 338 F.2d 815 (CA 2, 1964), and as a consequence there was no "borrowing" sufficient to give rise to bond discount.[11]

ing has no effect on a shareholder's position relative to the corporation so long as the reduction, as here, is pro rata. Bakeries' shareholders effectively owned all of the outstanding equity in the corporation both before and *immediately after* the exchange, despite the fact that the total number of shares was reduced. (Moreover, they were able to and did substantially preserve their positions as equity owners in the corporation by exercising the warrants issued them in connection with the recapitalization.) As for the sale of 16,000 shares to an underwriting syndicate we fail to see how this differs from the situation where authorized but yet unissued shares are sold by a corporation to persons other than existing shareholders. Inasmuch as Bakeries, prior to recapitalization, had authorized Class A Common Stock in the amount of 250,000 shares, of which only 162,500 were outstanding, the same effect could have been achieved without undertaking a recapitalization.

10. Under similar circumstances, but in a slightly different context, it has been held that the issuance of bonds or cash to retire stock in such a manner that the stockholders maintain their original equity position in the corporation gives rise to dividend income taxable to the shareholders. In Bazley v. Commissioner of Internal Revenue, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947), for example, the stockholders of a family corporation, under a plan of recapitalization, turned in their old shares of common stock in exchange for new common stock and debentures. In holding that the debentures were taxable as divi-

dends to the shareholders, the court said:
"(I)n the case of a corporation which has undistributed earnings, the creation of new corporate obligations which are transferred to stockholders in relation to their former holdings, so as to produce, for all practical purposes, the same result as a distribution of cash earnings of equivalent value, cannot obtain tax immunity because cast in the form of a recapitalization-reorganization." at 742, 67 S.Ct. at 1491. See also, United States v. Davis, 397 U.S. 301, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970). Clearly if the issuance of bonds is viewed as a distribution of dividends, there would be no bond discount since the corporation has really "given away" money rather than having "borrowed" it. However, under the view we take of the case before us we find it unnecessary to decide whether or not the debentures constituted a dividend.

11. We simply cannot overlook the complete lack of substance to the claims of the corporation here. Its assets were not diminished by a penny, either when the debentures were issued to the stockholders or where the face amount of the bonds was assumed by Fuqua (thus, presumably reducing the amount of the purchase price). The company paid nothing more to the bond-holders at any time than the current interest. It did not sell them to anyone at a discount. It issued them either as dividend, partial distribution of earned income and capital, or as "boot" in a tax-free reorganization. It cannot deduct as interest what it has not paid out or become liable to pay out to anybody.

■■ We have no doubt that, as taxpayer notes, there was a business purpose for the recapitalization. However, the existence of a business purpose does not establish the fact that the corporation in fact procured capital by issuing bonds, pro rata, to its shareholders. See United States v. Davis, supra, n. 10. Nor is it any answer to say that by issuing these debentures it incurred a debt which had not theretofore existed. Plainly a bona fide debt may be incurred in ways other than that which would give rise to bond discount, as where a corporation declares a dividend in the nature of a distribution of bonds to shareholders. See Commissioner of Internal Revenue v. Cohen, 121 F.2d 348 (CA 5, 1941).

For the foregoing reasons we conclude that no bond discount was incurred by Bakeries during its 1956 recapitalization. It is therefore not entitled to a bond discount deduction on its final tax return for 1963.

The judgment is reversed and the case is remanded to the trial court for entry of a judgment in favor of the United States.