**SOUTHERN FERTILIZER & CHEMICAL CO., Plaintiff,**

v.

**W. Samuel EDWARDS, Administrator of the Estate of Marion H. Allen, Defendant.**

**Civ. A. No. 1121.**

United States District Court
M. D. Georgia,
Macon Division.

June 23, 1955.

Stephens & Gignilliat, Savannah, Ga., Sutherland, Asbill & Brennan, Atlanta, Ga., Joseph B. Brennan, Atlanta, Ga., of counsel, for plaintiff.

Frank O. Evans, U. S. Atty., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., Andrew D. Sharpe, Carrington Williams, Sp. Assts. to the Atty. Gen., for defendant.

DAVIS, Chief Judge.

The above case having been submitted to the Court without a jury and the parties having filed stipulations of evidentiary facts, and upon a consideration of such evidence and the briefs and argument of counsel, the Court makes the following findings of fact and conclusions of law:

## Findings of Fact

### 1.

Plaintiff is a Georgia corporation, incorporated in 1905.

### 2.

Marion H. Allen, hereinafter called the Collector, was Collector of Internal Revenue for the District of Georgia from on or about July 16, 1937, until his death on September 9, 1952. Defendant is the duly appointed qualified and acting administrator of Allen's estate, and resides in Baldwin County, Georgia, within this district and division.

### 3.

Plaintiff keeps its books on the accrual basis method of accounting on a fiscal year ending November 30th.

### 4.

Plaintiff filed its income and excess profits tax returns for its fiscal year 1942 with the Collector, showing no excess profits tax liability, and showing income tax liability of $45,566.56, and declared value excess profits tax liability of $809.-75, or a total tax liability of $46,376.31. Said amount was paid by plaintiff to the Collector in installments of $11,594.-08 each on February 11, 1943, May 15, 1943, and August 11, 1943, and of $11,594.07 on November 15, 1943.

### 5.

On the basis of adjustments made in a Revenue Agent's report dated February 9, 1946, the Commissioner of Internal Revenue thereafter assessed a deficiency in excess profits tax for plaintiff's fiscal year 1942 in the amount of $35,769.43, and interest thereon in the amount of $5,973.45, making a total assessment of $41,742.88, which plaintiff paid to the Collector as follows: $34,-725.67 on November 26, 1945; $4,784.10 on August 1, 1946; and $2,233.11 (postwar credit) on August 1, 1946; and the Commissioner determined an overassessment of income tax for plaintiff's fiscal year 1942 in the amount of $11,957.99, which he allowed as a credit; and he also assessed a deficiency in declared value

excess profits tax for said year in the amount of $433.42, and interest thereon in the amount of $72.29, making a total assessment of $505.71, which plaintiff paid to the Collector as follows: $305.71 on November 26, 1945; and $200 on August 1, 1946.

6.

On December 22, 1947, plaintiff filed with the Collector a claim for refund of excess profits tax and a claim for refund of income and declared value excess profits taxes for its fiscal year 1942. Such claims set forth, among others, the grounds and reasons upon which this suit is brought. Both claims were denied on February 9, 1954. This suit was filed on February 8, 1954, for the recovery of such taxes.

7.

In making the assessments of excess profits tax and declared value excess profits tax, and in determining the overassessment of income tax, for plaintiff's fiscal year 1942, the Commissioner: (1) failed to include in equity invested capital any amount on account of the money paid in for plaintiff's cumulative preferred stock in 1919, (2) made no reduction in plaintiff's equity invested capital on account of plaintiff's issuance of bonds to its preferred stockholders in a recapitalization of 1937, (3) treated the face amount of such bonds as were outstanding in the taxable year as "borrowed capital," and (4) failed to allow any deduction for amortization of discount on such bonds.

8.

Plaintiff issued its 8% cumulative preferred stock in 1919, consisting of 5,000 shares of the total par value of $500,000, for which plaintiff received in cash the amount of $477,562.50.

9.

As of May 31, 1935, there were 4,742 shares of plaintiff's 8% cumulative preferred stock outstanding, on which unpaid accumulated dividends which had never been declared amounted to $537,426.66. Beginning in the Spring of 1935,

various plans were proposed for readjustment of plaintiff's capital structure. As a result of negotiations, agreement was reached on a plan of recapitalization which was declared effective on February 23, 1937. Under this plan, plaintiff issued new securities and cash for the 4,742 shares of the cumulative preferred stock that was outstanding. The preferred stockholders received from plaintiff in exchange for each shares of the 8% cumulative preferred stock the following:

(a) Cash of $7.89 per share on each share of 8% cumulative preferred stock;

(b) One share of new non-cumulative preferred stock issued by plaintiff, with a par value of $100 per share and a market value of $20 per share at the date received in 1937;

(c) One share of scrip, having a market value of $1 per share; 20 shares of such scrip being exchangeable for one share of the new non-cumulative preferred stock;

(d) One debenture bond issued by plaintiff, with a par value of $100 and a market value of $75.

10.

The parties were dealing at arm's length in negotiating, and agreeing upon, the terms of the exchange in recapitalization. The evidence amply supports plaintiff's contention that its debenture bonds were issued for a consideration of no more than $75 per $100 face amount of bonds. It was stipulated that the bonds were worth only 75% of their face amount, or a total value of $335,650; and it is found that they were issued for cumulative preferred stock of an equivalent value.

11.

The bonds issued by plaintiff in 1937, in the face amount of $474,200, were issued at a discount of 25%, or $118,550.

12.

The debenture bonds issued were dated June 1, 1935, and provided for maturity at the end of 25 years from that date;

that is, on June 1, 1960. Interest ran from June 1, 1935. The reorganization went into effect on February 23, 1937. The bonds were issued on or about March 1, 1937, and the accrued interest then due thereon was paid. The life of the bonds is 23¼ years.

### Conclusions of Law

#### 1.

■ The money paid in for the issuance of plaintiff's cumulative preferred stock in 1919, in the amount of $477,562.-50, should be included in plaintiff's equity invested capital under § 718(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 718 (a) (1).

#### 2.

■ The bonds issued by plaintiff in the recapitalization of 1937 constituted a distribution which was not out of earnings and profits (see South Atlantic Steamship Line, 42 B.T.A. 705, and § 115 (h) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115(h)), and plaintiff's equity invested capital should be reduced, under § 718(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 718(b) (1), by the fair market value of such bonds at the time distributed, namely, by the amount of $355,650.

#### 3.

The bonds issued by plaintiff in the recapitalization of 1937 should be treated as "borrowed capital" under § 719(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 719(a), only to the extent of their fair market value when issued, namely, $355,650.

#### 4.

■ The bonds issued by plaintiff in 1937 were issued at a discount of $118,550; the amount of such discount should be amortized over the life of the bonds, namely, 23¼ years; and a pro rata part thereof, amounting to $5,098.-92, is deductible for the fiscal year 1942, for income and excess profits tax pur-

poses. See Treasury Regulations 103, § 19.22(a)–18(3) (a).

Let the plaintiff submit a judgment in accordance with these findings of fact and conclusions of law.