**MISSOURI PACIFIC RAILROAD COMPANY**

v.

**The UNITED STATES.**

**Nos. 142–67, 95–68.**

United States Court of Claims.

Nov. 13, 1970.

Robert T. Molloy, Washington, D. C., attorney of record, for plaintiff.

E. Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant.

Philip R. Miller and Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR REHEARING OR RECONSIDERATION

PER CURIAM:

Defendant has asked us to reconsider part of our holding in this case. 427 F. 2d 727, 192 Ct.Cl. —— (June 12, 1970).[1] The objection is to the conclusion, in our original opinion, that, when new bonds are issued for old stocks, debt discount is available where the amount originally paid for the old stocks is less than the maturity value of the new debt securities for which they are exchanged. We applied that rule to the publicly held common stock of New Orleans, Texas & Mexico Railway Company, and remanded the case to the trial commissioner to determine the amount originally paid by the taxpayer-plaintiff for that stock. The Government urges that this rule is not appropriate for an exchange of new bonds for old stock.

■■ Since our original opinion, a helpful decision has been rendered on this very point in the Southern District of New York. Cities Service Co. v. United States, 316 F.Supp. 61, 26 AFTR2d ¶ 70–5100, p. 70–5378 (July 24, 1970). Judge Mansfield there points out (26 AFTR2d at 70–5385) that the basic principle for the allowance of debt discount is that a "true loss", i. e., a detriment, must be sustained by a taxpayer issuing obligations payable at their face value at some future date, and that, if in fact the taxpayer receives a lesser consideration upon issuance than it will have to return at maturity, the difference is normally considered a debt discount in the absence of circumstances indicating otherwise. That is the general principle we followed in Erie Lackawanna R. R. v. United States, 422 F.2d 425, 190 Ct.Cl. 682 (1970), and endeavored to apply in our opinion in the present case.

■ With respect to the particular problem of debt obligations exchanged for stock, the *Cities Service* opinion holds (26 AFTR2d at 70–5387) that the *minimum* amount the taxpayer may ascribe to the shares acquired by it for the new debt obligation is the original consideration, and "even if the market value of the shares at the time of the exchange had declined below their original issue price [taxpayer], would be precluded from claiming the decline in value as a loss because, having received the cost price upon issuance of the shares, it had not actually suffered a loss to the extent of the market decline." With this statement, we agree, of course.

The District Court then goes on to hold (26 AFTR2d at 70–5387), contrary to our original opinion in this case, that the original issue or cost price of the exchanged shares did not represent the ceiling value of the stock for the purpose of calculating debt discount. Its reasoning is that at the time of the exchange the shares could have a greater value to the taxpayer than the original issue or cost price. "Thus, where a taxpayer receives its own shares in exchange for issuance of its debentures, the value of 'what is received' for the purposes of determining the deductible loss or discount may be higher (though not lower) than the original issue price of the shares. The actual value to the taxpayer can be determined only after consideration of all relevant data, including the market value of the shares, the financial condition of the taxpayer at the time of the exchange, its profits prospects, and expert opinion."[2]

■ On reconsideration, persuaded by this *Cities Service* discussion, we hold that, with respect to shares of its own stock or stock in its subsidiaries, the present taxpayer cannot calculate, for debt discount purposes, the value of the stock at its cost or issuance price.

---

1. Plaintiff has also filed a motion for reconsideration which is being denied today, by order without opinion.

2. The opinion emphasizes that the market price would be relevant but not conclusive, and that the significant figure is that "representing the value to plaintiff [the taxpayer] of the shares in question.

That figure can be the floor but it cannot be the ceiling. The correct measure is the value of the New Orleans stock to plaintiff at the time of the exchange of the bonds for that stock.

In this instance, however, we need not order a trial to determine that value.[3] That determination has already been made. In taxpayer's reorganization proceedings, the value of the New Orleans stock was extensively canvassed before the Interstate Commerce Commission and the courts. See Missouri Pac. R. R. Reorganization, 275 I.C.C. 59, 113, 125–27 (1949); 290 I.C.C. 674, 678–79 (1954); In re Missouri Pacific R. R., 93 F.Supp. 832, 848–849 (E.D.Mo., 1950); 129 F.Supp. 392, 399 (E.D.Mo.1955); State of Texas v. Group of Institutional Investors, 191 F.2d 265, 273–274 (8th Cir. 1951) cert. denied, 342 U.S. 904, 72 S.Ct. 293, 96 L.Ed. 676 (1952); Missouri Pacific R. R. 5¼% S.S.B.C. v. Thompson, 229 F.2d 898, 900–901 (8th Cir. 1956). The final reorganization plan, which was confirmed and adopted, found the stock to be then worth $250 per share, but only $216 in maturity value of the bonds was allocated to each share, as the "equitable equivalent" of the $250 value. Missouri Pac. R. R. Reorganization, *supra*, 290 I.C.C. at 678–79. Thus, the value of the New Orleans stock, at the time of the exchange, has authoritatively been found, after considerable and careful inquiry (including expert testimony), to be not less than the maturity value of the bonds exchanged. *Cf.* Arkansas-Missouri Power Corp. v. Paschal, 243 F.2d 584, 588 (8th Cir.), cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47 (1957).

■ The fact that the stock was selling for less on the stock exchange is not at all conclusive (Cities Service Co. v.

United States, *supra*, 26 AFTR2d at 70–5387), and in this case is clearly outweighed by the other factors which led the Interstate Commerce Commission and the federal court to find and determine that the new bonds were a "fair and equitable" equivalent for the New Orleans stock. There was, therefore, no debt discount on the issuance of the bonds since the plaintiff-taxpayer received at least the equivalent (in stock value) of the maturity value of the bonds.

This conclusion calls for a modification of our prior holding and opinion. The exchange involving the New Orleans stock falls into the same category as the majority of the transactions dealt with in that opinion—there was no debt discount on the transaction—and there is no need for a remand. The remand ordered in our prior opinion is, accordingly, restricted to the transaction involving the Little Rock bonds. In addition, the last portion of our prior opinion, 427 F.2d at 732–734, 192 Ct.Cl. —, —,[4] is modified to refer only to bonds and other debt obligations, not to stock, insofar as the holding is that the original value of the securities must be looked to for the purpose of determining whether a bond discount exists. The few references in that opinion to the original cost of shares of stock as determinative are stricken and replaced by the standard of the actual value of the stock to the taxpayer at the time of the exchange. It goes without saying that, with respect to bonds exchanged for bonds, the opinion still stands as written.

To the extent indicated in this opinion the defendant's motion for rehearing or reconsideration is granted and our prior decision and opinion are modified.

---

3. In *Cities Service*, a trial was directed.

4. Beginning with the sentence, "The same general rule applies, namely, that the true value of the stocks and bonds *in the eyes of the corporation* is the original value of the securities, which value becomes a part of the assets of the parent corporation as the result of the reorganization and merger," and continuing through to the end of the opinion.