### ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY
### v.
### The UNITED STATES.
### Nos. 289-65, 303-66.

United States Court of Claims.
July 14, 1971.

See also 189 Ct.Cl. 280, 417 F.2d 1359.

---

George K. Dunham, Arlington, Va., for plaintiff. Robert T. Molloy, Washington, D. C., attorney of record. George E. Bailey, St. Louis, Mo., and Robert E. Simpson, Washington, D. C., of counsel.

Alan Moorhouse, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller and Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RESPECTING THE DEBT DISCOUNT ISSUE AND DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

COWEN, Chief Judge.

These cases come before the court on cross-motions for partial summary judgment. Plaintiff is seeking tax refunds for the years of 1953 through 1961. At issue in this proceeding are the years 1955 through 1961. The main question before us now is the troublesome one of the existence and measurement of debt discount when a corporation exchanges new debt obligations for its outstanding debt obligations and its outstanding stock. Since two exchanges are involved, we will consider each sepa-

rately before discussing the other issues raised in the parties' motions.

## I

### The 1947 Reorganization

In 1947 plaintiff St. Louis-San Francisco Railway Company underwent a reorganization pursuant to Section 77 of the Bankruptcy Act.[1] Under the plan adopted, plaintiff exchanged new stock, new bonds, and cash for outstanding bank loans, bonds, and accrued interest.[2] Before the exchange, the face value of this outstanding debt and interest totaled $363,789,651. Plaintiff gave up in the exchange securities having a maturity value and a par value of $244,856,494. The aggregate maturity value of the new bonds totaled $120,935,000, and their market value, as established by New York Stock Exchange quotations, totaled $91,866,411. A schedule of the reorganized company shows that in no instance did the face value of the bonds issued exceed the principal amount of the old debt. See McCullough v. United States, 170 Ct.Cl. 1, 24–25, 344 F.2d 383, cert. denied, 382 U.S. 901, 86 S.Ct. 232, 15 L.Ed.2d 155 (1965). Plaintiff tells us that the market value of the old debt equaled $91,866,411. The figure was apparently computed on plaintiff's assumption that fair market value equivalents were exchanged.

Plaintiff contends that it is entitled to amortize the difference between the maturity value of the new bonds and the fair market value of old debt as debt discount. This difference, according to plaintiff, would be $29,068,689, amortizable over the life of the bonds. Plaintiff relies on Treasury Regulation 1.163–3 and American Smelting & Ref. Co. v. United States, 130 F.2d 883 (3rd Cir. 1942). In the alternative, plaintiff argues that a trial would be necessary if we adhere to our decisions in Erie Lackawanna R. R. v. United States, 190 Ct.Cl. 682, 422 F.2d 425 (1970) and Missouri Pac. R. R. v. United States, 192 Ct.Cl. 318, 427 F.2d 727 (1970), modified on reconsideration, 193 Ct. Cl. 257, 433 F.2d 1324 (1970), cert. denied, 401 U.S. 944, 91 S.Ct. 1618, 29 L.Ed.2d 112 (May 3, 1971).

On the other hand, defendant says that fair market value is irrelevant when the corporation exchanges its own debt obligations. Defendant further contends that no trial is necessary, because the undisputed facts establish that no discount arose in the exchange. For both arguments, defendant relies on *Missouri Pacific, supra.*

After a review of our decisions in *Erie Lackawanna* and *Missouri Pacific,* we find no reason to change the rules set forth in those cases with respect to the existence and measurement of debt discount when a corporation issues new bonds in exchange for its outstanding debt. In this case, the plaintiff engaged in a reorganization—a recapitalization in which no new capital or assets were added. The secured creditors received new bonds, preferred stock, common stock and cash. The maturity value of the new bonds was less than the face value of the old bonds.

In *Missouri Pacific, supra,* we held contrary to the position now taken by plaintiff with reference to the use of fair market value for measuring debt discount. In that case, we said "The fact that the fair market value of the old bonds may be less than the face value of the new bonds can in no way reduce the amount of value originally paid to plaintiff for the old securities." 192 Ct.Cl. at 324, 427 F.2d at 731. Applying the rule announced in that case, we find that no debt discount arose in the 1947 reorganization, because the maturity value of the new debt did not exceed the maturity value of the old debt. There is no dispute about that fact and thus no

---

1. Plaintiff is an accrual basis taxpayer for the years in question.

2. Claims of the common and preferred stockholders and unsecured creditors were eliminated from the capital structure as worthless.

trial is necessary. Since plaintiff incurred no discount in the issuance of the new bonds in the 1947 reorganization, it is entitled to no deductions for the claimed discounts during the years in suit.[3]

## II

### The 1956 Exchange

In 1956 plaintiff exchanged Series A, five percent Income Debentures bearing a maturity date of January 1, 2006, plus cash and common stock for its outstanding Series A, five percent Preferred Stock, issued in the 1947 reorganization. For each $100 par value share of preferred stock surrendered, the holders of the preferred stock received a $100 maturity value Series A Debenture, one quarter share of common stock, and cash amounting to the unpaid portion of the dividend on the preferred stock.

In the aggregate, plaintiff exchanged debentures having a face value of $33,-129,000 and 82,823 shares of no par common stock for 331,290 shares of preferred stock which had a total par value of $33,129,000. The market value of the preferred stock, based on New York Stock Exchange quotations, averaged $22,908,148.35 over the period of the exchange. After the exchange was completed, the preferred stock was cancelled and retired.

This transaction was considered by the Internal Revenue Service a reorganization under Section 368(a) (1) of the Internal Revenue Code of 1954—a recapitalization under section 368(a) (1) (E).

In claiming that the 1956 exchange gave rise to amortizable debt discount, plaintiff's primary contention is that the fair market value of the preferred stock ($22,908, 148.35) subtracted from the maturity value of the debentures ($33,-129,000) is the measurement of debt discount. Thus, plaintiff has computed an amortizable discount of $10,220,851.65.

Plaintiff does not contend that the maturity value of the debentures issued in 1956 exceeded the amount it received when it issued the preferred stock in the 1947 reorganization. Indeed, the facts show that in the 1947 reorganization, plaintiff issued the preferred stock (received in the 1956 exchange), plus common stock and two issues of new bonds having a combined maturity, par, or stated value of approximately $244,856,-000 in satisfaction of claims totaling $363,789,000—an amount which exceeded the par and stated value of the stock and bonds issued in 1947 by more than $100,000,000.

The question as to whether original debt discount arises when there is an exchange of debt for equity has been before the court twice in recent years. In *Erie Lackawanna*, we rejected the use of fair market value as a determinative measurement of debt discount when bonds were exchanged for preferred stock. The key element in that case was the *value to the corporation of the stock received in the exchange* and that value was what had been paid in for the stock. Since the preferred stock in that case had been issued in exchange for the cancellation of debt equal to the par value of the stock, we held that when $100 par value shares were exchanged for $100 maturity value debentures, equivalents had been exchanged and no discount could be said to arise.

In Missouri Pacific, 192 Ct.Cl. 318, 427 F.2d 727 (1970), where bonds were exchanged for stock, we adhered to our decision in *Erie Lackawanna* by stating that when bonds are issued in exchange for stock, debt discount is to be measured by the difference between the face value of the new bonds and the amount originally paid for the stock. On reconsideration (193 Ct.Cl. 257, 433 F.2d 1324 (1970)), we further refined the measurement by deciding that the amount

---

3. On the assumption that the bonds issued in 1947 were issued at a discount, plaintiff makes certain additional claims. However, we need not consider these, because plaintiff concedes (page 26 of its Reply Brief) that a decision that the bonds were not issued at a discount precludes recovery on the additional claims.

originally paid in for the stock was the floor in computing debt discount but that the stock could have a greater value in the eyes of the corporation. This greater value was to be determined only after consideration of relevant information, including the market value of the stock, the financial conditions of the taxpayer at the time of the exchange, profit prospects, and expert opinion.

Plaintiff has argued that if we adhere to our decision on reconsideration in *Missouri Pacific, supra,* and reject the use of fair market value in determining debt discount, we should order a trial to determine the amount actually paid in for the preferred stock. We again reject the fair market value of the preferred stock in this type of transaction as determinative of the value of the shares to the corporation.

■ However, no trial is needed, because it is established here, as in *Erie Lackawanna,* that there was an exchange of equals, and as in *Erie Lackawanna,* plaintiff in the 1956 exchange got back one $100 par value share of preferred stock for each $100 debenture given up. Accordingly, plaintiff is entitled to no deduction on account of a claimed discount arising out of the 1956 exchange.

■ We would reach the same result by holding that the value to plaintiff of the preferred stock, received in exchange for the debentures, was significantly greater than what was initially paid in for the stock or its market value as shown by stock market quotations at the time of the exchange. In *Missouri Pacific* we said that all relevant factors, including the financial condition of the corporation, should be considered. The plaintiff reported to its shareholders that the exchange would increase its after-tax earnings by over $800,000 per year, without considering any saving due to a determination that it incurred debt discount. Considering this factor, we think that a receipt of stock that increased plaintiff's after-tax earnings by more than $800,000 per year cannot be said to be worth less than the face value of the bonds exchanged for the stock.

Plaintiff makes an additional argument with respect to the common stock, which in addition to the debentures, was exchanged for the preferred stock in the 1956 transaction. Plaintiff says that if it is assumed that each share of the preferred stock had a value of $100, plaintiff incurred debt discount in the amount of the value of the common stock given up in the exchange. Thus, plaintiff contends that if each share of common stock was worth $10, the debt discount should be computed by multiplying the total number of shares of common stock by $10.

■ Wholly apart from our alternate holding on the 1956 transaction, we find that this contention is without merit. In *Missouri Pacific,* we eliminated the value of new stock which, in addition to bonds and notes, was given in exchange for the corporation's outstanding debt securities and stock from consideration in determining debt discount, 192 Ct.Cl. at 321, n. 4, 427 F.2d at 729, n. 4. In an analogous situation, we ignored the issuance of preferred stock in determining whether there was a carry-over of debt discount and compared only the maturity value of new bonds and cash with the face value of the old bonds given up in the exchange. Chicago, Milwaukee, St. Paul and Pacific R. R. v. United States, 186 Ct.Cl. 250, 263, 404 F.2d 960, 967 (1968).

Common stock is not a fixed debt obligation, and the plaintiff made no definite obligation for the future by issuing those shares.

In addition, it is very difficult to assume that the preferred stockholders who surrendered their preferred shares in 1956 for the debentures believed, or had any reason to believe, that they were realizing additional interest income through the exchange (because of a debt discount due to the issuance of the common stock). The taxpayer cannot alter or repudiate its bargain to the detriment of the other side of the exchange, at this late date, in order to obtain a tax advantage for itself. *Cf.* Bethlehem Steel Corp. v. United States, 193 Ct.Cl. 459,

434 F.2d 1357 (Dec. 11, 1970); Commissioner of Internal Revenue v. Danielson, 378 F.2d 771, 775 (3rd Cir.), cert. denied, 389 U.S. 858, 88 S.Ct. 94, 19 L.Ed.2d 123 (1967).

## III

### The Reacquisition of Debentures

In 1959, 1960, and 1962,[4] plaintiff reacquired some of the debentures it issued in 1956 for preferred stock. The Internal Revenue Service on audit determined that plaintiff realized a gain on these transactions. The gain was computed on the basis of the maturity value of the debentures less retirement costs and unamortized issuance expense. The plaintiff elected to have these gains excluded from income under section 108(a) and signed Treasury Consent Forms 982 to have the tax basis of its property reduced pursuant to section 1017 by the amount of the gains so excluded from income.[5] In the consent, plaintiff requested that the gain, if any, reduce the basis of the preferred stock acquired through the issuance of the debentures. The Commissioner of Internal Revenue refused and reduced the basis of plaintiff's property subject to ratable depreciation. The Commissioner did not reduce the basis of plaintiff's property which was subject to the retirement-replacement method of depreciation.

■ Plaintiff first argues that the issue price of the debentures controls the computation of gain. We agree. The actual issue price, the value of what plaintiff received for the debentures, controls any determination of gain on the cancellation of indebtedness. Treas. Reg. 1.61–12(c); United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931); Fashion Park, Inc., 21 T.C. 600 (1954).

■ However, we have already found that the issues price of the bonds was

---

4. The issues relating to 1962 are based on a carryback loss from 1962 to 1961 and are included in plaintiff's 1961 refund claim.

5. Sections 108 and 1017 read:

"§ 108. *Income from Discharge of Indebtedness*

(a) *Special rule of exclusion.*—No amount shall be included in gross income by reason of the discharge, in whole or in part, within the taxable year, of any indebtedness for which the taxpayer is liable, or subject to which the taxpayer holds property, if—

(1) the indebtedness was incurred or assumed—

(A) by a corporation, or

(B) by an individual in connection with property used in his trade or business, and

(2) such taxpayer makes and files a consent to the regulations prescribed under section 1017 (relating to adjustment of basis) then in effect at such time and in such manner as the Secretary or his delegate by regulations prescribes.

In such case, the amount of any income of such taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income, and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction."

\* \* \* \* \*

"§ 1017. *Discharge of Indebtedness*

Where any amount is excluded from gross income under section 108(a) (relating to income from discharge of indebtedness) on account of the discharge of indebtedness the whole or a part of the amount so excluded from gross income shall be applied in reduction of the basis of any property held (whether before or after the time of the discharge) by the taxpayer during any portion of the taxable year in which such discharge occurred. The amount to be so applied (not in excess of the amount so excluded from gross income, reduced by the amount of any deduction disallowed under section 108(a)) and the particular properties to which the reduction shall be allocated, shall be determined under regulations (prescribed by the Secretary or his delegate) in effect at the time of the filing of the consent by the taxpayer referred to in section 108(a). The reduction shall be made as of the first day of the taxable year in which the discharge occurred, except in the case of property not held by the taxpayer on such first day, in which case it shall take effect as of the time the holding of the taxpayer began."

their maturity value. The value of the stock received by the plaintiff was equivalent to the maturity value of the bonds. Therefore, the Service properly computed the gain on the cancellation of indebtedness.

■ Plaintiff next argues that these gains should be applied to reduce plaintiff's basis in the preferred stock, the specific property for which the debentures were issued. Treas.Reg. 1.1017–1 (a) (1). However, section 1017 clearly requires that the property be held or acquired during the tax year the income is realized. Here the preferred stock was no longer in existence for the years 1959, 1960, and 1962, because it was cancelled or retired immediately after the completion of the 1956 exchange.

Plaintiff's third contention on this issue is that the Commissioner of Internal Revenue erred in failing to reduce the tax basis of all depreciable property owned by it, as required by Reg. 1.1017–1(b) (7). It is contended that the retirement-replacement method of accounting (which plaintiff uses) is a form of depreciation. Therefore, plaintiff maintains that the Commissioner erred in reducing only the basis of property subject to ratable depreciation.

■ Defendant counters with two arguments—one attacking the claim on substantive grounds and the other alleging a procedural defect. We do not reach the substantive issue because we find, as defendant contends, that plaintiff did not assert this ground for recovery in its administrative claim for refund and thus cannot now raise it. Section 7422; United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Union Pac. R. R. v. United States, 182 Ct.Cl. 103, 389 F.2d 437 (1968).

In its claim for refund before the Commissioner of Internal Revenue for 1961 (which is representative), plaintiff sought:

In each of the aforesaid years taxpayer filed Consent Form 982, electing to exclude the alleged profit set forth above under Section 108(a) and to reduce the basis of property under Section 1017 of the Code. In said Consent, taxpayer stated that it did not concede that the issue price of the debentures was equivalent to the face amount thereof. Taxpayer further requested that the gain, if any, resulting from the acquisition of the Debentures, as finally determined by agreement with the Internal Revenue Service or by a court of competent jurisdiction, should be applied to reduce basis of the specific property acquired; i. e., the Preferred Stock. The Examining Agent refused to reduce the basis of the specific property acquired as requested by taxpayer and, in lieu thereof, applied the general rule and reduced the basis of all of taxpayer's depreciable property to the extent of the amounts of "profit" set forth above. As a result of such reduction in basis, the Examining Agent disallowed deductions for depreciation as follows:

1959 ..................... $9,367.70
1960 ..................... 9,314.09
1961 ..................... 7,949.38
1962 ..................... 21,521.89

It is the contention of taxpayer that the action of the Examining Agent as explained above was erroneous, and that it is entitled to the deductions for depreciation improperly disallowed as aforesaid.

\* \* \*

A careful reading of the claim for refund shows that plaintiff asserted that the error of the Internal Revenue Service was its refusal to reduce the basis of the specific property acquired, i. e., the preferred stock, and that the reduction in the basis of "all of plaintiff's depreciable property" to the extent of the profit plaintiff made on the acquisition of the debentures resulted in an improper disallowance of deductions for depreciation. This is the only ground of complaint; there is no suggestion that the Internal Revenue Service erred in reducing the basis of some but not all of plaintiff's depreciable property, or more specifically

that the Service erred in not reducing the basis of plaintiff's property subject to the retirement-replacement method of depreciation. In our opinion, the allegations in the claim for refund were insufficient to call the Commissioner's attention to the potential ground for recovery now urged upon us, or to state the facts which would enable the Commissioner to discover for himself and correct what is now claimed to be erroneous action.

It is not determinative of the issue, but the fact that this ground for recovery is not mentioned or referred to in plaintiff's petition is an indication that it was not included in the claim for refund.

The reasons for requiring a ground for refund to be raised first before the Internal Revenue Service were explained in Union Pac. R. R. v. United States, *supra:*

> It is an undisputed general rule that a ground for refund neither specifically raised by, nor comprised within the general language of, a timely formal or informal application for refund to the Internal Revenue Service cannot be considered by a court in which a suit for refund is subsequently initiated. * * * The rule that a taxpayer cannot present one ground for refund in its claim and a different ground in its petition is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. * * * In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend. * * * (182 Ct.Cl. at 108, 389 F.2d at 442) [citations omitted]

Therefore, as a result of the omission in plaintiff's refund claim, the claim cannot now be considered.

## IV

### *Plaintiff's Alternative Contention on the Debt Discount Issue*

Plaintiff's final argument is that if it should be denied the right to amortize the debt discount it claims with respect to the 1947 and 1956 transactions, it should nevertheless be permitted to add the claimed debt discount to the cost basis of its depreciable property. The entire argument is predicated on the assumption that plaintiff actually incurred debt discount in the transactions mentioned. Since we have held to the contrary, this claim must also be denied.

## V

### *Conclusion*

For the reasons stated above, plaintiff's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment is granted, and to the extent that plaintiff's claims are covered by the foregoing opinion, such claims in plaintiff's petitions are hereby dismissed.